[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-12829

_____

D. C. Docket No. 01-00054 CV-1-MMP

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 4, 2003
THOMAS K. KAHN
CLERK**

TRAVELERS INDEMNITY COMPANY,

Plaintiff-Counter-
Defendant-Appellant,

versus

PCR INCORPORATED,

Defendant-Counter-
Claimant-Appellee,

DEBRA TURNER, As Personal
Representative of the Estate of
Thomas Paul Turner III, JAMES
CREIGHTON, et al.

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(April 4, 2003)**

Before EDMONDSON, Chief Judge, KRAVITCH and GIBSON*, Circuit Judges.

PER CURIAM:

This case involves a determination by the district court that an insurance company is obligated to provide coverage to an insured because an ambiguous exclusionary clause must be read to require specific intent by the insured to invoke the intentional-tort exclusion from liability coverage. The Florida Supreme Court, after considering these same facts in the context of the Florida workers' compensation statute, concluded that intentional torts included acts which involved substantial certainty that death or injury would befall an employee. Before we decide if Travelers Indemnity Company must provide liability coverage to PCR Incorporated, we need to ask the Florida Supreme Court for some advice about Florida law.

---

* Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

BACKGROUND

In 1991, an explosion at the PCR chemical plant killed Paul Turner and seriously injured James Creighton, chemical technicians for PCR. Two experts opined that the chemicals used to develop a replacement coolant for freon were "highly reactive" and "prone to spontaneous and violent decomposition when heated or compressed." The explosion seemingly occurred when the chemicals were mixed in containers that were ill-suited for the chemical reaction. One expert stated that a "substantial certainty" existed that placing large quantities of these volatile substances in a rudimentary propane tank rather than in a suitably equipped reactor would result in an explosion. Turner v. PCR, Inc., 754 So. 2d 683, 685 (Fla. 2000).

Creighton and Turner's wife brought suit in a Florida court for the damages they suffered. PCR invoked immunity from suit on the grounds that the only recourse for damages available to Creighton and Turner was through workers' compensation. PCR claimed its behavior constituted no intentional tort that would permit Creighton and Turner to bring suit against it outside of workers' compensation.

The Florida Supreme Court eventually determined that a subjective, specific intent was not required to overcome tort immunity under the workers' compensation statute. After considering the facts of this case, the Florida Supreme Court

3

concluded that a substantial certainty of death or injury adequately supported an intentional tort to overcome employer immunity from suit.

> [The] intentional tort exception includes an objective standard to measure whether the employer engaged in conduct which was substantially certain to result in injury. This standard imputes intent upon employers in circumstances where injury or death is objectively "substantially certain" to occur. To hold otherwise would virtually encourage a practice of "willful blindness" on the part of employers who could ignore conditions that under an objective test would be found to be dangerous, and later claim lack of subjective knowledge or intent to harm an employee.

Turner, 754 So. 2d at 691. The Florida Supreme Court concluded that there were issues of fact about whether PCR engaged in conduct substantially certain to cause injury or death and remanded the case to the trial court.

Before the explosion, Travelers had issued an insurance policy to PCR. Travelers brought an action for declaratory judgment in the district court to determine the coverage scope of the insurance policy. Travelers contended that it bore no responsibility in defending or indemnifying PCR against the suit brought by Creighton and Turner because the policy covered no intentional torts. Part One of the policy provides workers' compensation coverage. That coverage extends only to injuries to employees that result from accident or disease. Part Two of the policy provides employers' liability insurance. The terms of the policy require Travelers to pay all sums PCR "legally must pay as damages because of bodily injury to [PCR's]

4

employees, provided the bodily injury is covered by this Employers Liability Insurance." But the liability coverage is limited to accidental injury: "This employers liability insurance applies to bodily injury by accident . . . ." Coverage for accidental injury is subject to exclusions, including "bodily injury intentionally caused or aggravated by [PCR]." Travelers is required by the policy to defend against any suit brought for damages payable under the terms of the policy (such as damages for accidental, unintentional injuries).

The district court determined that the insurance law of Florida required any ambiguity in an insurance contract to be resolved in favor of the insured. Because earlier Florida caselaw allowed an insurance carrier to avoid coverage only where an intentional tort was supported by a specific intent to cause harm, the district court concluded there existed, at least, some ambiguity in the clause "bodily injury intentionally caused or aggravated" by PCR. The district court granted the motion for judgment on the pleadings by PCR.

DISCUSSION

In the earlier case before the Florida Supreme Court, PCR claimed it owed no liability to Turner and Creighton because "workers' compensation is the exclusive remedy for 'accidental injury or death arising out of work performed in the course and scope of employment.'" Turner, 754 So. 2d at 686 (quoting Fla. Stat. § 440.09(1) (1997)). The Florida Supreme Court, however, "reaffirmed" in the Turner decision that "workers' compensation law does not protect an employer from liability for an intentional tort against an employee." Id. at 687. The high court also stressed that, in the workers' compensation context, two alternative bases exist for an employee to demonstrate an intentional tort sufficient to avoid tort immunity: the employer must have either "exhibit[ed] a deliberate intent to injure *or* engage[d] in conduct which is substantially certain to result in injury or death." Id. (internal quote marks and citation omitted)(emphasis in original). The second part of the disjunctive test is viewed objectively and "imputes intent upon employers in circumstances where injury or death is objectively 'substantially certain' to occur." Id. at 691.

Travelers claims that the insurance policy with PCR specifically excluded "bodily injury intentionally caused or aggravated by you." Based on this exclusion, Travelers denies a duty on their part to defend or to indemnify PCR against the suits

6

by Turner and Creighton. Travelers argues that injuries intentionally caused by PCR include those injuries (or death) that are substantially certain to occur, consistent with the conclusion of the Florida Supreme Court about workers' compensation. The Turner case, according to Travelers, should be extended to impute intent on PCR and to relieve Travelers from its obligations under the insurance contract.

We are required to apply state law when construing insurance policies. Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1186 (11th Cir. 2002). Florida law requires that insurance policies be read for their plain language and that every provision be given its full meaning and effect. Id. But if the "relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [ ] other limiting coverage, the insurance policy is considered ambiguous." Id. (quoting Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000)). An ambiguous policy must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." Id. (internal quotes omitted). "In fact, *exclusionary clauses* are construed even more strictly against the insurer than coverage clauses." Id. at 1196 (internal quotes omitted)(emphasis added).

7

The insurance agreement between Travelers and PCR fails to address directly the intent requirement for "bodily injury intentionally caused or aggravated" by PCR. Two decisions of the Florida courts -- which predated the insurance policy here -- seemed to conclude that specific intent was required by the ambiguous exclusionary language of the insurance policies there under review. In <u>Cloud v. Shelby Mut. Ins. Co.</u>, 248 So. 2d 217 (Fla. 3d DCA 1971), an insured backed his vehicle into another occupied vehicle in a deliberate attempt to move the other vehicle, which was blocking the insured's vehicle in a driveway. When his vehicle overrode the bumper of the other vehicle, a passenger in the other vehicle was injured. The insurance company sought exclusion from coverage because the injury was caused "intentionally by or at the direction of the insured." <u>Id</u>. at 218. The state appellate court determined that the defendant intended to push the other car, but intended no harm to the passenger.

> The courts have generally held that injury or damage is "caused intentionally" within the meaning of an "intentional injury exclusion clause" if the insured has acted with the <u>specific intent</u> to cause harm to a third party, with the result that the insurer will not be relieved of its obligations under a liability policy containing such an exclusion <u>unless the insured has acted with such a specific intent</u>.

<u>Id</u>. (quoting 44 Am. Jur. 2d § 1411, at 259, "Insurance")(emphasis added).

8

In Phoenix Ins. Co. v. Helton, 298 So. 2d 177 (Fla. 1st DCA 1974), an insured defendant drove his car into a crowd of people to extricate his wife from a fight. While moving his vehicle in the crowd, a man was injured. The insurance company invoked an exclusionary clause, claiming the injuries were "caused intentionally by or at the direction of the insured." Id. at 178. Relying principally on the language in Cloud, the state appellate court concluded that the insured must have specifically intended to cause injury to the plaintiff before the insurer could invoke the intentional tort exclusion from liability coverage. Id. at 180-82.

The policy clause excluding from coverage "bodily injury intentionally caused or aggravated" by PCR may possibly be read -- in the light of Florida caselaw -- as requiring specific intent. Resolving all ambiguities of the exclusion clause in favor of the insured, it seems that Travelers could remain liable for what might be interpreted as PCR's "intentional" torts if the torts were committed without specific intent to cause injury to the employees.

The law of Florida on point seems debatable. As the circumstances of this liability-coverage case might lead us to a wrong conclusion about Florida law, we think we need some advice. We certify to the Florida Supreme Court the following dispositive questions:

9

1. Does Florida insurance law require a reading of specific intent into an insurance clause excepting from liability coverage "[b]odily injury intentionally caused or aggravated" by the insured?

2. Is PCR in this case entitled to liability coverage based on the language of this policy agreement, read in the light of Florida's law of interpreting insurance policies?

The certified questions we seek to pose to the Florida Supreme Court are intended by us in no way to limit the scope of that high court's review.[*] The outcome of this declaratory judgment action will be resolved by interpretations of Florida state law, and we invite a full discussion by the Florida Supreme Court. We welcome their guidance. The records and briefs will accompany this certification as a means of assistance should the Florida Supreme Court accept the certification.

CERTIFIED QUESTIONS.

---

[*] We have addressed none of Travelers' policy arguments about encouraging deliberate wrongdoing by shifting the liability burdens for wrongdoing onto the insurance industry. The Florida Supreme Court may wish to consider the policy arguments as it contemplates this issue of state law.